UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY LEE POLK,

    Plaintiff

v

CRAIG TUER and PATRICK SHARKEY,
jointly and severally,

    Defendants.

_____/

HON. DAVID M. LAWSON

Case No.: 00-cv-10218-BC

ERNEST L. JARRETT (P29770)
Attorneys for Plaintiff
2100 Cadillac Tower Building
Detroit, MI 48226
(313) 964-2002

MARK S. MEADOWS (P24101)
Attorney for Defendants
OFFICE OF THE ATTORNEY GENERAL
Tort Defense Division
P.O. Box 30217
Lansing, MI 48909
(517) 373-6096
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANT PATRICK SHARKEY'S MOTION
## FOR SUMMARY JUDGMENT

### INTRODUCTION

    The above-captioned action arises from an incident which occurred on June 10, 1997, at which time the Plaintiff alleges that he was unlawfully shot by Michigan State Trooper Craig Tuer. Plaintiff asserts claims under both state and federal law against both Defendants.

1

Defendant Patrick Sharkey, Defendant Tuer's partner on the night of the shooting, has filed his motion for summary judgment. The essence of the Defendant's motion is that because it was Trooper Tuer, and not himself who fired the lone gunshot, he (Sharkey) cannot be liable to the Plaintiff.

For the reasons set forth below, Plaintiff disagrees and submits that the Defendant's motion should be denied.

## STATEMENT OF FACTS

In his brief in support of the motion, Defendant Sharkey offers a short version of the events leading up to the shooting. While the Plaintiff does not agree with certain details asserted by the Defendant, the differences in the competing accounts prior to the point in time at which the shot was fired are not pertinent to any of the issues raised by the instant motion, and therefore the Plaintiff will not focus upon them at this time. Suffice it to say that the following immutable facts are not in dispute.

1. Plaintiff operated an automobile on June 10, 1997.
2. Defendants Tuer and Sharkey are both officers of the Michigan Department of State Police, and were partners on the night of the incident.
3. Defendants followed the Plaintiff for a short time eventually signaling for him to stop his car and to pull over (although the parties dispute at what point in the sequence of events the signal occurred).
4. Plaintiff did not initially stop his car, but did so eventually, and immediately thereafter, exited his car and attempted to flee on foot.
5. Defendant Tuer fired one shot from his handgun, seriously wounding the Plaintiff.

Although it is not disputed by the Plaintiff that Defendant Sharkey did not fire his gun, nor was he even out of the car at the time the shot was fired, his conduct in the aftermath of the shooting is what Plaintiff submits is actionable.

Plaintiff alleges that immediately after the shooting, at a time when it was known that the Plaintiff had been wounded, but before the severity of his injury could be known to anyone, and despite the fact that the Plaintiff was in excruciating pain, both Defendants lifted the Plaintiff's clothing, rolled him back and forth, and lifted him from the ground in an effort to determine the location of the wound site and the trajectory of the bullet. (See Complaint ¶ 15). In his deposition the Plaintiff testified to these very facts (See Plaintiff's dep pp. 20-21 attached Exh. A).

Moreover, although Defendant Sharkey denied this conduct in his deposition testimony taken in this matter, he admitted to the very conduct Plaintiff now alleges in testimony offered by him in criminal proceedings. (See transcript of proceedings, *People v Polk*, Case No. 97-3662-FY, 70th District Court; Testimony of Patrick Sharkey, pp. 228-236 attached Exh. B). Not only did the Defendant admit to moving the Plaintiff, and digitally probing his wound, he also admitted that the sole purpose in doing so was to enable him to determine the direction and path of the bullet (pp. 233-236, Exh. B).

Following the events of June 10, 1997, Plaintiff was charged with several criminal offenses. Without specifying each charge, the charges can be divided into two categories. The category relates to the conduct of the Plaintiff as a driver (i.e., operating without a license, improper plates etc.). The second category relates to the alleged assaultive conduct by the Plaintiff which purportedly provided the reason for Defendant Tuer's use of deadly force.

3

Plaintiff pled guilty to each charge in the first category, and those charges are not the subject of any claim asserted by him in this action.

The alleged assaultive charges were abandoned by the prosecutor following the preliminary examination after all physical evidence was available and could be considered as a whole. Plaintiff's claim for malicious prosecution focuses only upon the charge(s) which fall within the second category of charges.

**ARGUMENT**

I.

The Defendant first contends that he cannot be liable to the Plaintiff because he did not fire the shot which wounded the Plaintiff, and indeed was not even outside of the patrol car at the time the shot was fired. The Defendant, however, incorrectly implies that the firing of the weapon constituted the only battery which occurred in the sequence of events. This premise upon which the Defendant's entire argument on this point is based, conveniently overlooks Defendant Sharkey's conduct and the admissions made by him in his testimony in the criminal case against the Plaintiff.

It is well settled that a battery is the willful and harmful or offensive touching of another person. *Espinosa v Thomas, 189 Mich App 110 (1991); Clarke v Kmart Corp, 197 Mich App 541, app den 443 Mich 862 (1992)*.

In the instant case, the conduct of both police officer Defendants, immediately after the shooting constitutes a battery. Indeed, not only did the Defendant Sharkey admit to the touching which Plaintiff contends is actionable in addition to the shooting, he also admitted that the reason for the touching was to determine the "direction and path" of the bullet, and that such movement

4

of a wounded individual (whether criminal suspect or not) is inconsistent with his training as a police officer. (Exh. B).

Because Defendant Sharkey's conduct in this regard was both willful and so reckless as to demonstrate a disregard for the likelihood that injury would result constitutes at least gross negligence, if not intentional misconduct. Accordingly, either way, the limited statutory immunity afforded to governmental employees is not available to the Defendant in the instant case. MCLA 691.1407.

II.

The Defendant next contends that he is entitled to summary judgment with respect to Plaintiff's federal claim for use of excessive force in violation of the Plaintiff's Fourth Amendment right. As with the Plaintiff's claim for assault and battery, the Defendant focuses only upon the act of firing a gun at the Plaintiff, as if that was the only actionable "force" used against him.

The Fourth Amendment allows police officers to use "reasonable" force during an arrest, investigatory stop or any other "seizure" and/or permits the use of reasonable force up to and including deadly force for the protection of the officer and/or others. Conversely, any force used which is not "reasonable" is excessive and hence violates the Fourth Amendment. *Graham v Connor, 490 US 386 (1989).* Reasonableness must be examined by an objective standard, *Graham, supra.*

While Plaintiff certainly contends that the shooting constituted an excessive use of force, he also contends that the *de facto* physical examination undertaken by both Defendants was the use of unreasonable force.

5

Consequently, by rolling and lifting the seriously wounded Plaintiff, and digitally probing his wound, Plaintiff submits that the Defendant Sharkey committed an act employing unnecessary, and unlawful force, which by definition is excessive force, subsequent to the actual shooting.

### III.

Defendant Sharkey next contends that he is entitled to summary judgment on Plaintiff's claims for malicious prosecution.

It should be noted that the Plaintiff does not assert a claim for malicious prosecution with respect to any of the charges brought against him for his conduct as a driver which fall within the first category of charges as described above. Thus, Plaintiff does not disagree with the Defendant when he contends that probable cause to arrest the Plaintiff existed.

But while there may have been probable cause to effectuate an arrest, and/or to initiate criminal proceedings against the Plaintiff for some of the crimes charged against him, that probable cause cannot be used to validate all charges brought against the Plaintiff.

Plaintiff alleges in his complaint and submits now, that the criminal proceedings initiated by the Defendants relating to charges of assaultive behavior purportedly by the Plaintiff against Defendant Tuer, were initiated fraudulently for the sole purpose of lending some appearance of legitimacy to the Defendant's use of force. Plaintiff alleges that both Defendants knowingly testified falsely with respect to Plaintiff's conduct as an assailant in an effort to insulate the Defendant Tuer from criminal, departmental and/or civil penalty or liability for the improper use of deadly force. As such the elements of a malicious prosecution have been met. *Bass v Spitz*,

6

*522 F Supp, 1343 (DC Mich 1981); Adams v Metiva, 32 F3d, 375 (6th Cir 1994).*

Furthermore, the Defendant's reliance on *Coogan v City of Wixom, 820 F2d, 170 (6th Cir 1987)* is misplaced.

Although it is true that the court in *Coogan* found that during the preliminary examination in that case, the parties had fully "litigated" the issues, and hence the finding of probable cause during the bind over in the state district court collaterally estopped the Plaintiff from asserting an absence of probable cause in his subsequently filed civil action, the court also cautioned against applying its holding in most other cases. See *Coogan* at p 175.

Unlike in *Coogan*, the Plaintiff did not testify at his preliminary examination, nor did he call any witnesses in his defense. He did not offer any evidence of his own nor did he advance any affirmative defenses. In short, Plaintiff did not engage in the sort of full blown adversarial proceedings, vigorous cross- examination of prosecution witnesses notwithstanding, as would permit one to conclude that the issue of his conduct after exiting his car and the propriety of the shooting had been "full and fairly" litigated

For those reasons, Plaintiff submits that his claims for malicious prosecution must survive the instant motion and be presented to the trier of fact.

IV.

In his effort to avoid Plaintiff's claim for intentional infliction of emotional distress, Defendant Sharkey focuses exclusively on the "extreme and outrageous" element of the claim, and contends that based upon the "undisputed facts", he did not "engage in any outrageous conduct".

Plaintiff submits, however, that based upon the conveniently omitted facts (omitted in

7

Sharkey's motion) he did indeed engage in "extreme" or "outrageous" conduct. He submits that to manhandle and to probe his wound for the sole purpose of attempting to learn the path of the bullet for the sole purpose of choreographing a false, yet plausible reason for using deadly force is extreme or outrageous conduct. Moreover, whether or not such conduct reaches the requisite level of egregiousness, is a question of fact for the jury, unless this court can conclude that as a matter of law, no reasonable jury could find Sharkey's conduct to be outrageous or extreme.

V.

Contrary to the Defendant's assertion, there was no "plea bargain". Plaintiff pled guilty to those offenses he actually committed and the prosecutor elected not to proceed on the assaultive offenses charged, however, there was no bargained for *quid pro quo*.

Plaintiff's due process claim must survive the instant motion.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully submits that the Defendant Sharkey's motion for summary judgment must be denied.

Respectfully submitted,

By /s/ Ernest L. Jarrett
ERNEST L. JARRETT (P29770)
Attorney for Plaintiff
2100 Cadillac Tower
Detroit, MI 48226
(313) 964-2002

Dated:     March 27, 2002

8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED